261 So.2d 323 (1972)
THOMAS ORGAN COMPANY, Appellant,
v.
UNIVERSAL MUSIC COMPANY et al., Appellees.
No. 8828.
Court of Appeal of Louisiana. First Circuit.
April 17, 1972.
W. Frank Gladney, Baton Rouge, for appellant.
Thomas H. Watts, Baton Rouge, for appellees.
Before LANDRY, BLANCHE and TUCKER, JJ.
TUCKER, Judge.
Thomas Organ Company, a California corporation with its principal office in Los Angeles, California, brought suit on open account against Universal Music Company, *324 a partnership composed of William "Bill" Dunnam and Roy Wigfield, domiciled in the Parish of East Baton Rouge, State of Louisiana, and Old Southern Music Company, Inc., a Louisiana corporation domiciled and doing business in the Parish of East Baton Rouge, which had bought the assets and liabilities of the Universal Music Company, including the indebtedness herein sued upon. Plaintiff sued the aforementioned defendants jointly and in solido for the amount of One Thousand Five Hundred Eight and 21/100 ($1,508.21), Dollars, together with legal interest thereon from September 21, 1968, until paid, said amount representing the balance due on merchandise and supplies sold and delivered to Universal Music Company by the plaintiff between January 1, 1968, and August 21, 1968, as appears from the itemized statement of account attached to the pleading and marked Exhibit P-1.
Defendant Old Southern Music Corporation answered with a general denial. When service was attempted to be made upon the two defendant partners, Dunnam and Wigfield, it was discovered that neither still resided within the state. Plaintiff then petitioned for permission to serve defendant Bill Dunnam at his address in Missouri under the provisions of the Lousiana "Long Arm Statute", LSA-R.S. 13:3201. The evidence shows that an envelope containing the petition and the amended petition were received and the receipt signed by a member of Dunnam's family at his domiciliary establishment, he being absent from the state at the time, all of which defendant Dunnam fully admits, but claims was not sufficient citation of service under LSA-R.S. 13:3204. Subsequently another envelope containing a duplicate set of the pleadings was sent to defendant Dunnam, by certified mail, marked "Deliver to addressee only". Defendant Dunnam refused this set of pleadings in person, as shown by the evidence.
Defendant Dunnam then filed declinatory, dilatory and peremptory exceptions, alleging by way of declinatory exception that domiciliary service was insufficient under R.S. 13:3204 and that he is a non-resident, and that there is no one within the state of Louisiana on whom plaintiff could make service as a partner, employee, or agent for the service of process as required by C.C.P. Art. 1263. By means of the declinatory, dilatory and peremptory exceptions defendant Dunnam pleads the issue of plaintiff's status as a non-resident corporation. He alleges that it has no procedural capacity and no right of action under R.S. 13:3201 and argues that Louisiana's "Long Arm Statute" was not designed to give protection to non-residents, nor to provide them a forum or procedural machinery for suit against other non-residents.
Quoting dicta from Aucoin v. Hanson, 207 So.2d 834 (La.App.3d Cir. 1968), the trial court here maintained defendant's declinatory exception and dismissed its suit without prejudice on the grounds of insufficient service, reasoning that the Louisiana "Long Arm Statute" was not designed to give a forum to non-resident plaintiffs, but only to give maximum protection to Louisiana residents who have sustained injury by non-residents who have had "minimal" contacts within the state. The trial judge declined to rule on any other issues presented and reserved plaintiff's right to pursue defendants in whatever state they might find them. It should be noted that the Aucoin case did not involve a non-resident plaintiff and is not in point. Its primary concern is whether or not defendant had sufficient "contacts" within Louisiana to justify suit in a Louisiana forum.
From this judgment plaintiff appealed alleging that the trial court erred in not finding sufficient service upon defendant, and in not finding that non-resident plaintiffs were intended to be included within the Louisiana "Long Arm Statute", without the inclusion of which the statute would be unconstitutional and in conflict with numerous decisions of the United States Supreme Court. Plaintiff-appellant *325 also alleges error by the trial court in dismissing his suit on the maintenance of a declinatory exception instead of giving him time in which to make proper service upon the defendant, if the former service be deemed insufficient.
Addressing itself first to the issue of the inclusion of non-resident plaintiffs within the intendment of Louisiana R.S. 13:3201, this court holds that non-resident plaintiffs were not intended to be excluded from the scope of this statute. Nowhere in the statute are plaintiffs even mentioned much less defined by class. Defendant argues that the statute was intended to protect Louisiana residents only, but there is no substantiation for this argument whatsoever. In the Comments of the Louisiana State Law Institute printed in West's Code of Civil Procedure at the time of the adoption of Louisiana's "Long Arm Statute" in 1964, it is stated:
"R.S. 13:3201 through 13:3207 were adopted on the recommendation of the Louisiana State Law Institute to permit the courts of this state to tap the full potential of jurisdiction in personam over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)."
In neither of the above cited cases is there any language to indicate an intention to limit the jurisdiction of state courts with respect to suits involving non-resident defendants who have had "minimal" contacts within the state to plaintiffs who are residents of that state only. On the contrary both of these cases indicate an intention to depart from the former holding of Pennoyer v. Neff, cited hereinbelow, and satisfy the requirements of "due process" only by such methods as do not offend "traditional notions of fair play and substantial justice" as follows:
"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 132 A.L.R. 1357. See Holmes, J., in McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, L.R.A. 1917F, 458. Compare Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 777, 145 A.L.R. 1113. See Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170."
(Int. Shoe Co., 326 U.S., at 316, 66 S.Ct., at 158 (1945), quoted in McGee v. Int. Life Ins., 355 U.S., at 222, 78 Sup.Ct., at 201 (1957)). The intention of the Louisiana legislature to follow this liberal point of view is made manifest by the Comment set forth above.
In its commentary to sub-paragraph (b) of R.S. 13:3201, which provides for personal jurisdiction over non-residents "contracting to supply services or things in this state", the Law Institute spoke as follows:
"(b) This section is an adaptation, in civilian terminology, of Section 1.03(a) of the Proposed Uniform Interstate and International Procedure Act, which in turn is based on portions of Ill.Stat. *326 Ann. c. 110, § 17 (Smith-Hurd 1961); Mich. Stat. Ann. §§ 27A.705, 27A.715, 27A.725, and 27A.735 (1961 Supp.); Mont. R. Civ. Pro. 4B(1) (e) (1962 Supp.); N.H.Rev.Stat.Ann. § 300.11 (1962 Supp.); N.Y.C.P.L.R. § 302(a) (1) (1962 Supp.); Vt. Stat. Ann. tit. 12, § 855 (1962 Supp.); Wis. Stat. Ann. tit. 25, § 262.05 (Cum.Supp.1962)."
In regard to the citation above of the Illinois statute, it is very interesting to note the comments in Weintraub, Conflict of Laws (1971):
"Moreover, even though, all things being equal, a state may have greater interest in providing a convenient local forum for its own residents than for nonresidents, the forum where the defendant has acted may, because of the availability of witnesses, be the most convenient for suit and may be by far the most convenient available forum for a nonresident plaintiff from a neighboring state who wishes to sue a nonresident defendant from a distant state. Fortunately, most of the states that formerly limited their long-arm statutes to resident plaintiffs or foreign corporate defendants, or both, have removed these undesirable limitations."
"The Illinois act wisely dispenses with any mention of the fictions of `consent' or `presence' as the basis for the jurisdiction and makes it clear that it is the act enumerated that, when committed in the forum, forms an independent specifically-affiliating basis for judicial jurisdiction."
Louisiana is advanced in its not having placed restrictions in its "Long Arm Statute" prohibiting suit within the courts of its state by non-residents plaintiffs, probably due to the fact that its statute was adopted later than those of many states and probably was fashioned after observation of the experience of the other states.
A careful reading of R.S. 13:3201, and of the leading Law Review articles interpreting it, L'Enfant, Comment, Personal Jurisdiction, 26 La.L.R. 350 (1966) and Cleveland, Comment, Personal Jurisdiction over Non-residentsThe Louisiana "Long Arm" Statute, 40 Tul.L.R. 366 (1966) reveals that Louisiana's primary concern, like that of Illinois (see Weintraub supra) is "the act enumerated that, when committed in the forum, forms an independent specifically-affiliating basis for judicial jurisdiction." It is the act that is of concern to Louisiana and for which it makes available its forum, and only incidentally the parties to it.
In the instant case the plaintiff sold items to the Universal Music Company of Baton Rouge, Louisiana, over a period of eight months. This company was a partnership which had always been located in Baton Rouge. The defendant sought service to be made on Bill Dunnam, one of the partners, who had lived in Baton Rouge for seventeen years and only after selling his business to Old Southern Music Company, had left Baton Rouge, presumably due to financial reverses. Not only were a "Minimum" of contacts in Louisiana so far as the subject matter of this case is concerned, but all of the contacts were made here. The facts of this case are far more compelling than those of the International Shoe Company and McGee cases cited above, in which the defendants were non-resident corporations which did business in the states in which sued, among others. Here the defendant did all of its business in Louisiana and became "non-resident" only when its partners both left the state. Under Louisiana Law a partnership as distinct from a corporation has no agent for service of process within the state. Under C.C.P. Art. 1263 service must be made upon a partner. To deny plaintiff service upon defendant partners just because they had left the state wherein they conducted all of the business which is the subject of this suit would be offensive to the concept of "fair play and substantial justice." Where not only "minimal", but even substantial, contacts have been made within a state, as is the situation in the *327 present case, the Louisiana courts should certainly be able to protect its interest in acts and business carried on within the confines of its borders. Indeed Louisiana has far more interest in the subject matter of this suit than does the state of Missouri, for example, where one of the defendants, Bill Dunnam, is now residing.
There are no positive prohibitions against suit by a non-resident party against another non-resident party contained in Louisiana's "Long Arm" statute. In the instant suit there are many cogent reasons for it, as set forth supra; hence it will be held that Thomas Organ Company of California has the procedural capacity to bring suit under LSA-R.S. 13:3021 against defendants, even though they may presently reside outside of the state.
In regard to the service of process R.S. 13:3204 provides as follows:
"A certified copy of the citation and of the petition in a suit under R.S. 13:3201 shall be sent by counsel for the plaintiff to the defendant by registered or certified mail, or actually delivered to the defendant by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general jurisdiction.
"Service of process so made has the same legal force and validity as personal service on the defendant in this state. Added Acts 1964, No. 47, § 3."
Under the clear wording of the above-quoted statute, all that is necessary to constitute service upon a non-resident under the "Long Arm" statute is that counsel for plaintiff send a certified copy of the citation and of the petition in the suit to the defendant by registered or certified mail (or actually deliver it in person). There is no provision against domiciliary service and no requirement for a signed return receipt. It has been held in both the International Shoe Company and McGee cases cited supra, that the sending by mail of a certified copy of citation and petition satisfies the requirements of "due process." To allow a defendant to defeat service of process by refusing to accept a registered letter or to allow a member of his family to receive it for him ineffectually would make a mockery of R.S. 13:3204 and render it completely ineffective. The evidence in this case reveals the plaintiff has twice made service upon defendant Bill Dunnam in satisfaction of the requirements of R.S. 13:3204.
For the foregoing reasons the judgment of the trial court dismissing plaintiff's suit will be reversed, and this matter remanded to the trial court for a trial on the merits in accordance with law and the views herein expressed. The appellee, Bill Dunnam, is cast with the costs of this appeal; the assessment of all other costs shall await the outcome of this litigation.
Judgment reversed and remanded.